IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LONNELL S. ALLEN, SR., | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MONTGOMERY COUNTY, et al., | : | |
| Defendants | : | NO. 09-1458 |

MEMORANDUM

GENE E.K. PRATTER, District Judge                                    NOVEMBER 19, 2009

Lonnell S. Allen, Sr., a former inmate at Montgomery County Correctional Facility, has filed suit against Montgomery County; Montgomery County Correctional Facility ("MCCF"); Montgomery County Correctional Facility Board of Prison Inspectors ("MCCF-BPI"); Julio M. Algarin, Warden of MCCF; Correctional Medical Care, Inc. ("CMC"), a medical care provider at MCCF; Dr. Margaret Carillo, medical director of CMC; and Emmanuel Jean Louis and Kathleen Bradley, both certified physician assistants employed by CMC. Mr. Allen asserts a civil rights claim under 42 U.S.C. § 1983, as well as negligence and infliction of emotional distress claims based upon the alleged failure to diagnose and treat his rectal cancer. Presently before the Court is Defendants' Rule 12(b)(6) motion to dismiss. For the reasons stated below, the Court grants the Motion in part and denies it in part.

I.      STATEMENT OF ALLEGED FACTS

Mr. Allen's Complaint sets out allegations of a harrowing existence as an inmate at MCCF. The following description of Mr. Allen's allegations sets the framework for evaluating

the defense motion.

Mr. Allen was incarcerated at MCCF from February 5, 2007 until February 1, 2008, except for approximately four weeks in the middle of the summer of 2007. (Compl. ¶¶ 2, 3.) From the very beginning of his incarceration, Mr. Allen consistently and frequently complained of rectal bleeding, rectal masses, sudden weight loss, anemia, insomnia, anxiety, depression, and severe lower body pain that prevented him from sitting or lying. (Compl. ¶ 4, 37.) He informed prison staff that he could not sleep or eat because of his ailments and pains. (Compl. ¶ 36d.) Specifically, Mr. Allen submitted a new "Inmate Medical Request Form" several times a week, presenting 100-150 of the forms[1] to facility personnel during the course of his incarceration, but it was not until January 2008 that MCCF staff sent Mr. Allen for diagnostic testing, which revealed that he was suffering from advanced rectal cancer. (Compl. ¶¶ 5, 26, 32.)

Despite Mr. Allen's repeated requests, he received little attention from the MCCF personnel. By April 2007, he was so distraught that he was placed in the "dignity suite" under observation for signs of suicidal behavior, but Defendants made no effort to determine or treat the cause of his despair. (Compl. ¶ 38.) At points, the institutional staff periodically provided Mr. Allen with topical cream, non-steroidal anti-inflammatories like ibuprofen (which apparently exacerbated his bleeding), and pain medications. (Compl. ¶ 37.) However, these medications were not refilled in a timely manner, often leaving Mr. Allen without any treatment for his symptoms. (See Compl. ¶ 36.) The MCCF staff also denied Mr. Allen access to diagnostic tools or treatment for the underlying causes of his pain and bleeding. Although Dr. Carrillo wrote or

---

[1] A sample of these forms is found in Mr. Allen's Complaint at paragraphs 37a-hh. The complete forms include descriptions of Mr. Allen's severe pain and how he repeatedly ran out of prescribed medications.

signed medical orders for Mr. Allen, she allegedly refused to see him. (Compl. ¶ 39.) Ms. Bradley and Mr. Louis, both physician assistants, saw Mr. Allen on several occasions, but did not provide meaningful evaluation or treatment. (Compl. ¶¶ 40, 41.) On June 8, 2007, when Mr. Allen claims he was in such pain that he could not sit down, was suffering from severe rectal bleeding, and repeatedly was passing out, Mr. Louis cut or incised the malignant tumor growing on Mr. Allen's rectum, reporting that he had removed a clot from a "hemorrhoid." (Compl. ¶ 42.)

On January 21, 2008 Mr. Allen had a surgical consult at a medical facility outside MCCF. (Compl. ¶ 26.) Mr. Allen was then diagnosed with adenocarcinoma of his rectum, an invasive, locally-advanced rectal cancer. (Compl. ¶ 27.) After this diagnosis, Dr. Carillo wrote a prescription for morphine tablets, providing Mr. Allen some pain relief that Dr. Carillo had been unwilling to supply during the previous 11 months. (Compl. ¶ 29.)

Promptly on the heels of the cancer diagnosis, MCCF staff moved expeditiously to have Mr. Allen discharged from custody. (Compl. ¶ 3.) On February 1, 2008, Mr. Allen was discharged from MCCF and he sought medical care on his own. (Compl. ¶ 28.) Since his release, Mr. Allen has undergone multiple surgeries and invasive treatments, including radiation treatment, chemotherapy, and the placement of a permanent colostomy. (Compl. ¶¶ 9, 30.) He states that his prognosis is poor and that he faces the prospect of a painful deterioration and continued suffering. (Compl. ¶ 9.)

## II.   STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Conley v. Gibson,

355 U.S. 41, 45-46 (1957). Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley, 355 U.S. at 47), a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. To survive a motion to dismiss, a civil complaint must allege "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

The Court "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Twombly, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906 (3d Cir. 1997).

## III. DISCUSSION

Mr. Allen's civil rights claims arise under 42 U.S.C. § 1983. To establish a valid claim under § 1983, he must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived him of rights, privileges and immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986).

Prison officials violate a prisoner's Eighth Amendment rights if they are "deliberately indifferent" to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Pretrial detainees or other individuals who have been arrested but who have not been convicted of a crime and sentenced may state a "deliberate indifference" claim not expressly under the Eighth Amendment, but under the Due Process Clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir.1976). The Eighth Amendment provides guidance as to a minimum standard of care or a "floor" for determining the rights of a pretrial detainee, including the right to medical care. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) (noting that the due process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner"). Thus, the "deliberate indifference" standard under the Eighth and Fourteenth Amendments is the same. Simmons v. City of Phila., 947 F.2d 1042, 1067 (3d Cir.1991); Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir.1987), *cert. denied,* 485 U.S. 991 (1988).[2]

---

[2] In his Reply brief, Mr. Allen notes that he was incarcerated for a parole violation. Thus, he suggests that it is unclear whether he should be categorized as a prisoner or a pre-trial detainee. (Reply 3-5.) Because Mr. Allen has stated a claim under the Eighth Amendment (see

### A. Claims Against Municipal Entities Montgomery County, MCCF, and MCCF-BPI

#### 1. Whether MCCF and MCCF-BPI Are Sueable Entities Under § 1983

As a threshold matter, Defendants argue that the claims against MCCF and MCCF-BPI should be dismissed because they are not proper parties to this litigation as a matter of law. (Mot. 6-7.) Defendants claim that MCCF-BPI and MCCF are not entities subject to suit because neither is a "person" for the purposes of § 1983 liability. Defendants also appear to argue that because a county and its subdivisions are to be treated as a single entity for the purposes of § 1983 liability, MCCF-BPI and MCCF should be considered as one with Montgomery County and dismissed from the litigation. (Mot. 7.)

MCCF is not a "person" under § 1983 and for that reason cannot be liable to Mr. Allen for his injuries. Amaro v. Montgomery County, No. 06-3131, 2008 WL 4148610, at *4 (E.D.Pa. Sept. 8, 2008) (stating specifically that Montgomery County Correctional Facility is not a "person" under § 1983); see also Mitchell v. Chester County Farms Prison, 426 F.Supp. 271, 274 (E.D.Pa. 1976) (holding that a prison is not a "person" subject to suit under federal civil rights law); Adams v. Hunsberger, 262 Fed. App'x 478, 481 (3d. Cir. 2008) ("The District Court properly concluded that [the plaintiffs'] claims against the Pennsylvania Department of Corrections were barred, as it is not a 'person' within the meaning of 42 U.S.C. § 1983."). However, Defendants cite no authority for the proposition that MCCF-BPI cannot be sued under

---

infra) and because the Fourteenth Amendment protections are at least as great as the Eighth Amendment protections available to a convicted prisoner, his institutional status does not matter for the purposes of this motion. Once discovery commences, however, the Court anticipates that the parties will clarify Mr. Allen's status.

§ 1983, nor has the Court found any support for this proposition. In fact, there was at least one § 1983 case tried in this District against both Montgomery County and MCCF-BPI. See Schwartz v. County of Montgomery, 843 F. Supp. 962 (E.D.Pa. 1994). Moreover, contrary to Defendants' contention, it is by no means uncontroverted that a county and its subdivisions are always treated as a single entity for the purposes of § 1983 liability, thereby supporting dismissal of claims against the subdivision when there is also a claim against the county.[3] Thus, MCCF will be dismissed from this litigation, but MCCF-BPI remains.

### 2. Municipal Liability

Mr. Allen asserts a Monell claim against the municipal entities. In Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978), "the Supreme Court held that § 1983 may give rise to municipal liability when a constitutional violation occurs as a result of a policy, regulation, or decision officially adopted by the municipality or informally adopted by custom." Benckini v. Coopersburg Police Department, No. 03-3671, 2004 WL 1686954, at *6 (E.D.Pa. July 27, 2004) (citing Monell). However, municipalities cannot be held vicariously liable for its employees

---

[3] The cases cited in Defendants' Motion to Dismiss do not establish that a county and one of its subdivisions are inevitably or inexorably treated as one under § 1983. Defendants point out that in Colburn v. Upper Darby Township, the Court of Appeals for the Third Circuit treated a municipality and its police department as one entity. 838 F.2d 663, 671 n.7 (3d Cir. 1988). But the court did not dismiss the claims against the police department on that basis. Id. at 671-72. In fact, the court specifically declined to decide whether the police department was a "person" subject to §1983 liability. Id. at 671 n.7. Similarly, in Bonenberger v. Plymouth Township, the court stated that the Plymouth Township Police Department and the city would be treated as a single entity for liability purposes. 132 F.3d 20, 25 n.4 (3d Cir. 1997). But again, it did not dismiss the claim against the police department on that basis. Id. at 25. Finally, in Baldi v. City of Philadelphia, the court dismissed §1983 claims against a police department because a specific state statute required any suits brought against the department to be brought against Philadelphia. 609 F.Supp. 162, 168 (E.D. Pa. 1985). Defendants do not cite to any similar statutory dictates that would similarly cover suits brought against Montgomery County and its correctional facilities.

7

pursuant to 42 U.S.C. § 1983 because there is no *respondeat superior* liability under this statute for the actions of municipal agents. Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir.2006) (citing Monell v. Dept. of Soc. Serv., 436 U.S. 658, 691 (1978)). "[A] municipality may be held liable only if its policy or custom is the 'moving force' behind a constitutional violation." Id. Thus, it is not enough to show that a constitutional violation has occurred. To establish liability, the plaintiff must prove that the violation was the result of an offending municipal policy or custom. Id.; see also McTernan v. City of York, 564 F.3d 636, 657 (3d Cir. 2009) ("When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom.").

The existence of a policy or custom for purposes of § 1983 liability can be established one of in two ways, namely, (1) by showing that a " 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issued an official statement of policy," Jiminez v. All American Rathskeller, 503 F.3d 247, 250 (3d Cir.2007) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)), or (2) by demonstrating that a "custom" exists "when, though not authorized by law, such 'practices of state officials [are] so permanent and well settled' that they operate as law." Id. (quoting Monell, 436 U.S. at 690).

Defendants argue that Mr. Allen's Complaint fails to allege any municipal policy, custom, or edict that caused Mr. Allen's injuries. (Mot. 9.) In response, Mr. Allen points to approximately 100-150 "Inmate Medical Request Forms" that he submitted that were absent from his records and, he surmises, perhaps were never transmitted to the appropriate medical personnel as evidence of an unconstitutional custom, practice, policy or procedure of the

8

Defendants. (Reply 8.) Mr. Allen argues that these allegations, "though admittedly sparse," state a claim against MC, MCCF-BPI, and MCCF. (Id.) Mr. Allen further argues that at this stage of the litigation, before discovery has been taken, the exact policies and procedures at issue are in the exclusive possession and control of the Defendants, making it difficult for him to identify them in great detail.

The allegations in the Complaint regarding municipal liability are indeed sparse. However, Mr. Allen alleges that he submitted approximately 150 inmate request forms that were ignored and, in some instances, never given to the appropriate medical personnel. Accepting these allegations as true, they suggest that, with deliberate indifference, personnel throughout Montgomery County and MCCF-BPI acted at least consistently, arguably in keeping with an institutionally accepted policy or practice. Thus, the Court cannot conclude that the Complaint inadequately alleged that the municipality's bodies maintained constitutionally impermissible policies, practices, or customs with respect to the handling of inmate requests for medical treatment. Mr. Allen's allegations may ultimately establish that such policies, practices or customs caused Mr. Allen's injuries by delaying for almost one year his consultation with an outside physician and subsequent diagnosis of rectal cancer.

### B. Claims Against Warden Algarin In His Official Capacity

Mr. Allen concedes that there are insufficient facts pleaded to support a theory of liability against Mr. Algarin in his *individual capacity*. (Reply 9.) Hence, at a minimum, claims against Mr. Algarin in his individual capacity will be dismissed. However, Mr. Allen continues to assert claims against Warden Algarin in his official capacity based on the aforementioned policies, procedures, customs and practices. (Id.)

Naming a government official in his official capacity is essentially the same as naming the government entity itself, and requires proof that some policy or custom of the entity was the cause of the constitutional deprivation at issue. Monell, 436 U.S. at 691 n.55. "Suits against state officials in their official capacity therefore should be treated as suits against the State." Hafer v. Melo, 502 U.S. 21, 25 (1991). The Court of Appeals for the Third Circuit has affirmed the dismissal of official capacity claims against individuals where a plaintiff also sues the municipal employer. See Cuvo v. De Biasi, 169 Fed. App'x. 688, 693 (3d Cir. 2006) ("We will affirm the District Court's dismissal of the claims against the officers in their official capacities because a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them"); see also Dawson v. Harran, No. 08-7, 2008 WL 1959696, at *6 (E.D.Pa. May 5, 2008) (granting defendants' motion to dismiss plaintiff's claims against defendants in their official capacities as being duplicative of claims against township); Burton v. City of Philadelphia, 121 F.Supp.2d 810, 813 (E.D.Pa. 2000) (same).

Here, by his own admission, Mr. Allen asserts identical claims against Montgomery County and Warden Algarin in his official capacity based on constitutionally impermissible procedures, policies and customs allegedly in place in the County. (See Reply 9.) Because these claims are redundant, the Court will dismiss the claims against Warden Algarin in his official capacity. Thus, Mr. Algarin is dismissed in all regards.

### C. Claims Against Medical Defendants Margaret Carrillo, Emmanuel Jean Louis, and Kathleen Bradley[4]

Defendants argue that the delays in providing adequate medical care to Mr. Allen may rise to the level of negligence, but not deliberate indifference. (Mot. 16.) Defendants claim that the Complaint reveals that Mr. Allen received medical care from the medical professionals, just not the type of medical care that he wanted. (Id.) As such, Defendants contend that this is not a case of deliberate misfeasance, but, at most, a case of inadvertence or mistake. (Id. 18.)

As previously noted, under the two pronged standard set forth in Estelle, to state a claim for a § 1983 violation, a plaintiff must demonstrate that defendants (1) acted with deliberate indifference to (2) the plaintiff's serious medical needs. Estelle, 429 U.S. at 104. "Indifference" must be substantial to violate the Constitution, id. at 106, and state prison authorities have wide discretion regarding the nature and extent of medical treatment for an inmate. A constitutional violation is not established by negligence or even "an inadvertent failure to provide adequate medical care." Id. at 105; see also Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993) ("The law is clear that simple medical malpractice is insufficient to present a constitutional violation."). Instead, the alleged deliberate indifference of prison officials requires a sufficiently culpable state of mind, see Farmer v. Brennan, 511 U.S. 825, 834 (1994), and must rise to the level of "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Disagreements with a

---

[4] Defendants have not expressly moved to dismiss the claims against Correctional Medical Care. However, to the extent Defendants intend their general dismissal arguments to cover CMC, this Court reiterates that the Complaint alleges that CMC was responsible for handling and maintaining inmate requests for medical treatment and that CMC systematically precluded Mr. Allen's requests from his record and failed to bring these request to the attention of the appropriate medical professionals. As such, for the reasons noted in the discussion of municipal liability, see infra, the Complaint also states a claim against CMC based on unconstitutional practices, policies or customs.

medical judgment cannot form the basis of a deliberate indifference claim. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir.1990). However, by the same token, simply because a prisoner received some form of medical treatment does not preclude a finding of deliberate indifference. Durmer, 991 F.2d at 67 (holding that the district court erred in concluding that physician's conduct in sending inmate to several specialists and providing some form or treatment precludes a finding of deliberate indifference).

The Court of Appeals for the Third Circuit has indicated that deliberate indifference can be manifested by a variety of actions, including: (I) the denial of reasonable requests for medical treatment which expose an inmate to undue suffering; (ii) knowledge of the need for medical care and the intentional refusal to provide such care; or (iii) the delay of necessary medical treatment for non-medical reasons. See Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir.1987); see also Durmer, 991 F.2d at 68. With respect to what qualifies as a serious medical need, the court has held that "a medical need is 'serious,' in satisfaction of the second prong of the Estelle test, if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.' " Lanzaro, 834 F.2d at 347 (citations omitted).

In this case, Mr. Allen specifically alleges that he was examined on numerous occasions by Ms. Bradley and Mr. Louis, neither of whom provided any meaningful evaluation or treatment. The Complaint includes one gruesome episode, at a time when Mr. Allen was clearly exhibiting signs of serious illness, when Mr. Louis apparently mistook Mr. Allen's rectal cancer for a hemorrhoid and proceeded to cut the malignant tumor in a non-sterile prison setting without anesthesia. With respect to Dr. Carrillo, the Complaint alleges that although she received Mr.

Allen's numerous pleas for medical care, she only prescribed periodic pain medication, and refused to see him, order diagnostic tests, or refer him to an outside specialist. Furthermore, when the pain medication that Mr. Allen was receiving ran out, medical defendants failed to provide additional pain medication, causing Mr. Allen undue pain and emotional distress.

Mr. Allen has stated a § 1983 claim against these medical professionals. The medical requests submitted by Mr. Allen describe a condition so persistent and painful that any "lay person would easily recognize the necessity for a doctor's attention." Lanzaro, 834 F.2d at 347. These medical professionals supposedly knew of, and in some instances, repeatedly observed Mr. Allen's extreme pain and suffering, yet, according to the Complaint, they denied his reasonable requests for medical treatment. Over the course of almost a year, these medical professionals insisted on continuing a course of treatment that they knew or should have known was painful or ineffective that then resulted in serious harm to Mr. Allen, which also indicates deliberate indifference. See White, 897 F.2d at 109 (holding that deliberate indifference can be established by "the sheer number of specific instances in which the doctor allegedly insisted on continuing courses of treatment that the doctor knew were painful, ineffective or entailed substantial risk of serious harm to the prisoners"). As a result of the failure to treat his rectal cancer, Mr. Allen explains that he has suffered greatly, as revealed by his complaints of severe lower back pain, abdominal pain, and internal bleeding, among other things. If ultimately proven, the provision of such astonishingly deficient treatment by a medical doctor and two certified physician assistants to an inmate who was clearly exhibiting signs of serious health conditions rises beyond the level of negligence and establishes deliberate indifference.

### D. Punitive Damage Claims

In his Complaint, Mr. Allen seeks punitive damages from all of the Defendants, except Montgomery County. Defendants have moved to dismiss the punitive damages claims against MCCF-BPI and MCCF. In Mr. Allen's Reply brief, however, he has conceded that he cannot, as a matter of law, recover punitive damages from the municipal entities, MCCF-BPI and MCCF. (Reply 13.) As a result, the Court will dismiss the punitive damage claim against MCCF-BPI.[5]

## III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' Motion to Dismiss. An appropriate Order will follow.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[5] MCCF has already been dismissed from this action on other grounds, as explained above.